**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

                                              **CASE NO. 13-39597-BKC-RBR**

**MICHAEL JAMES PICAZIO,**                    **CHAPTER 7**

        **Debtor.**

_____/

**MOTION BY CHAPTER 7 TRUSTEE (I) FOR AUTHORITY TO SELL REAL**
**PROPERTY OF THE DEBTOR AND NON FILING SPOUSE (II) TO APPROVE**
**TERMS AND CONDITIONS OF SALE CONTRACT AND (III) APPROVE**
**SETTLEMENT OF TRUSTEE'S OBJECTION TO HOMESTEAD EXEMPTION**
**PURSUANT TO RULE 9019, FED. R. BANK.P**

    **KENNETH A. WELT,** as the Chapter 7 Trustee (the "Trustee"), of the bankruptcy

estate of Michael James Picazio (the "Debtor"), by and through counsel, and pursuant to 11

U.S.C. §363, files this Motion (I) For Authority To Sell Real Property of the Debtor And Non

Debtor Spouse; (II) To Approve terms and conditions of the Contract For Purchase And Sale of

Real Property "As Is" Pursuant to 11 U.S.C. §363; and (III) Approve Settlement of Trustee's

Objection to Claimed Homestead Exemption, pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure, and in support of the Motion states as follows:

**I.**      **BACKGROUND.**

    **A.**      **Bankruptcy Filing.**

    1.      On December 13, 2013 (the "Petition Date"), the Debtor, Michael James Picazio

(the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the

"Bankruptcy Case").

    2.      Kenneth A. Welt was thereafter appointed as the Trustee of the Debtor's Chapter

7 estate (the "Estate"). The Section 341 Meeting of Creditors was held on January 14, 2014 at

10:00 a.m. and was concluded at that time.

3.      On December 13, 2013, the Debtor filed his Summary of Schedules, Schedules A-J (the "Schedules") and Statement of Financial Affairs ("SOFA") including Schedule C-Property Claimed As Exempt.

4.      On January 14, 2014, the Debtor filed his Amended Summary of Schedules, Amended Schedule C, [ECF No. 11] (the "Amended Schedules").

5.      On January 29, 2014, the *Chapter 7 Trustee filed an Ex-Parte Application to Retain Mariaelena Gayo-Guitian and the law firm of Genovese, Joblove & Battista* (the "GJB Law Firm") to represent him in this case [ECF No. 23]. On January 30, 2014, the Court entered an Order approving the employment of the GJB Law Firm [ECF No. 24]. On February 7, 2014, the Court entered an Order Granting Application to Employ Harry Stampler [ECF No. 26].

6.      Following the retention of the GJB Law Firm, the Trustee has been actively investigating and evaluating the Debtor's assets, real properties, executory contracts and unexpired leases as set forth in the Amended Schedules.

**B.      Objection To Claimed Homestead Exemption.**

7.      On February 11, 2014, the Trustee filed a Motion to Extend Time to Object to the Debtor's Claimed Exemptions [ECF No. 29]. On March 21, 2014, the Court entered an Order granting the extension through April 14, 2014 [ECF No. 52].

8.      On April 7, 2014, the Debtor filed Amended Summary of Schedules and Amended Schedule B, [ECF No. 65] (the "Amended Schedule B").

9.      On April 14, 2014, the Trustee filed a Second Motion to Extend Time to Object to the Debtor's Claimed Exemptions [ECF No. 68]. On May 13, 2014, the Court entered an Order Granting the extension through June 14, 2014 [ECF No. 71].

10.     On June 13, 2014, the Trustee filed his Objections to the Claimed Exemptions of the Debtor and Motion for Turnover [ECF No. 105].  The Trustee objects, among other things, to the claimed exemption of the Claimed Homestead Property to the extent such exemption does not apply in this case since, upon information and belief, the Debtor may have abandoned his interest in the Property prior to the Petition Date or alternatively the Tenancy by the Entirety exemption is not applicable.  The Trustee has not finalized his investigation of the Debtor's purported interest in the Property. However, for the reasons stated herein the Trustee has agreed to the proposed sale of the Property in order to resolve any and all issues related to the Property with the Debtor and non-debtor spouse pursuant to the terms and conditions described below.

11.     On July 22, 2014, the Trustee filed the (I) Amended Objections to Claimed Exemptions of the Debtor; (II) Motion to Strike and/or Disallow Amended Schedules and/or Amended Schedule C; and (III) Motion for Turnover [ECF No. 136].

## II.     TERMS OF CONTRACT FOR PURCHASE AND SALE OF REAL PROPERTY

12.      Pursuant to the Schedule A, the Debtor disclosed an interest in real property located at 2101 Middle River Drive, Fort Lauderdale, Florida (the "Property").  The Property is titled under the name of the Debtor and his wife, Kim Lowry Picazio ("Mrs. Picazio").  The Debtor is claiming the Property as exempt on Amended Schedule C pursuant to Article X, §4(a)(1), Fla. Const; Fla. Stat. Ann. §222.01 & 222.02 and as Tenancy by the Entirety ("TBE"). The current value of the Property is listed at $1,247,000.00.

13.     The Property is subject to a Final Judgment of Foreclosure obtained by Wells Fargo f/k/a Wachovia Mortgage, FSB f/k/a World Savings Bank ("Wells Fargo") entered on June 30, 2010 and recorded in Broward County Public Records on July 16, 2010, OR Bk 47233, Page 404, Page 1-3. The amount set forth in the judgment far exceeds the value of the Property.

3

14.     Contemporaneously with the filing the of the Trustee's Objection to Claimed Exemptions, the Debtor and Mrs. Picazio received a Contract for the Sale and Purchase of the Property (the "Sale Contract").   Copy of the Contract is attached hereto and marked as **Composite Exhibit "A".**  The Contract shall govern the material terms and conditions of the proposed transaction between the Michael and Kim Picazio (collectively the "Seller") and 2101 Middle River Drive LLC (the "Purchaser") with respect to the sale of the Property.

15.     Pursuant to terms of the Contract, the Purchaser has made an offer to the Seller in the amount of $1,160,000.00 (the "Purchase Price") on an "As-Is/Where-Is" basis, without any representations and warranties by the Sellers and/or Trustee. The Purchaser has made an initial deposit of $10,000.00 (the "Deposit") to be held in escrow until closing of the Property.

16.     The proposed Sale is subject to Wells Fargo's Final Judgment and consent to a short sale of the Property and negotiation of a payoff amount (the "Payoff Amount") in full and final satisfaction of the claims asserted by Wells Fargo.

17.     The Trustee believes in his best business judgment that the sale of the Property and payment of net sale proceeds to Wells Fargo in the estimated amount of $1,053,395.00, is in the best interest of the creditors and this estate to the extent that it reduces the amounts allegedly due and owing Wells Fargo on the subject Property, while creating a recovery for the estate in the amount of $11,600.00 ("Trustee Carve-Out").

18.     The proposed sale will generate sufficient net proceeds after payment of Wells Fargo's Payoff Amount, real estate taxes, broker fees and other customary closing costs, for which the estate will realize a distribution in connection with this transaction.

## III.     SETTLEMENT OF OBJECTION TO HOMESTEAD PROPERTY

19.     Further, by way of this Motion, the Trustee seeks approval by the Court to compromise a controversy with the Debtor and Mrs. Picazio with respect to the estate's interest in the Homestead Property, as more particularly described below.

20.     As set forth above, the Trustee filed his Objections to the Claimed Exemptions of the Debtor and Motion for Turnover asserting among other things an objection to the Homestead Exemption.  As part of the proposed sale of the Homestead Property, the Trustee, Debtor and Mrs. Picazio (collectively, the "Parties") each agree that settlement between them with regard to the Objection will avoid unnecessary litigation and will more efficiently effectuate the orderly liquidation of the subject Property. Accordingly, the Trustee will agree to settle the Trustee's Objection to the Homestead Exemption upon payment of the Trustee Carve-Out (the "Settlement Agreement").  The relief requested herein will benefit creditors of the estate as the liens filed against the Property exceed the value of the real property.

21.     The Trustee seeks approval of the Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Rule 9019(a) provides that, after notice and a hearing, a court may approve a proposed settlement of a claim.  The decision of whether or not to approve a compromise is within the sound discretion of the court. *In re Chira*, 367 B.R. 888, 896 (S.D. Fla. 2007) citing *In re Air Safety Intern., L.C.*, 336 B.R. 843, 852 (S.D. Fla. 2005); *In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988).

22.     In passing on the Settlement Agreement, the Court must determine whether a proposed settlement is fair and equitable.  *Chira*, 367 B.R. at 896 (S.D. Fla. 2007).  The Court must evaluate whether the compromise falls below the "lowest point in the range of reasonableness." *In re S&I Investments*, 421 B.R. 569, 583 (Bankr. S.D. Fla. 2009) citing *In re*

*Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993); *Arrow Air*, 85 B.R. at 886 (Bankr. S.D. Fla. 1988).

23.     The Eleventh Circuit, in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549, provided additional guidance regarding whether a settlement should be approved, and established a four-part test:

   a.     The probability of success in litigation;

   b.     The difficulties, if any, to be encountered in the matter of collection;

   c.     The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

   d.     The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

24.     The Trustee submits that the proposed Settlement Agreement overwhelmingly satisfy the *Justice Oaks* standard. The Settlement Agreement provides the Trustee with an opportunity to efficiently settle the objection to the claim of exemption on favorable terms, and will provide the Debtor's estate with a significant recovery that might otherwise be lost if Wells Fargo chooses to proceed with a foreclosure sale.

25.     If the Trustee were forced to prosecute the Claims in the absence of a settlement, the estate would be required to commence an adversary proceeding against Mrs. Picazio as it relates to her interest in the Homestead Property, which if the matter were to proceed to trial would require additional discovery and administrative expense to the estate. Moreover, given the existing Final Judgment recorded against the Property there is no potential for the recovery of any funds unless Wells Fargo consents to the short sale of the Property.

26.    Accordingly, after full and careful consideration, the Trustee believes that the resolution of the Trustee's Objection to the Homestead Exemption is in the best interest of creditors of the estate.

27.    Further, the Bankruptcy Code should approve the sale of the Property when the trustee articulates "some business justification."  *See In re Continental Airlines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Copy Crafters Quick Print, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988); *Matter of St. Petersburg Hotel Assoc., Ltd.*, 37 B.R. 341, 43 (Bankr. M.D. Fla. 1983).  In order to use, sell or lease property of the estate under Section 363(b)(1), the trustee must demonstrate that (i) accurate and reasonable notice was provided; (ii) the price to be paid for the property is adequate; and (iii) the use, sale or lease will be in good faith (*e.g.,* not a lucrative deal to an insider). *See In re Industrial Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

28.    Each requirement is satisfied in this case.  The Trustee seeks to join in the sale of the Property pursuant to his duty to under 11 U.S.C. § 704(1) to "collect and reduce to money the property of the estate." The Trustee believes that the Purchase Price is fair in light of the estimated fair market value of the Property and liens recorded against the Property.

**WHEREFORE**, the Trustee, Kenneth A. Welt, respectfully requests that the Court to enter an Order: (i) granting the Motion; (ii) approving the Contract attached to this Motion as **Composite Exhibit "A"** and terms thereof on an "As-is/Where-is" condition, without warranties or representations of any nature, (iii) approving settlement of Trustee's Objection to Claimed Homestead Exemption, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and (v) granting such other and further relief as is deemed just and proper.

**Dated this 22nd day of August, 2014.**

Respectfully Submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**

Counsel for the Chapter 7 Trustee
PNC Bank Building
200 East Broward Blvd., Suite 1110
Fort Lauderdale, Florida 33301
Telephone: (954) 453-8000
Facsimile:  (954) 453-8010

By:____/s/Mariaelena Gayo-Guitian_____
        Mariaelena Gayo-Guitian, Esq.
        Florida Bar No. 0813818

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this Motion was served to all registered users through the CM/ECF System via electronic notification and/or by U.S. Mail to all other parties on the attached service list on the 22nd of August, 2014.

By:____/s/ Mariaelena Gayo-Guitian_____
        Mariaelena Gayo-Guitian, Esq.
        Florida Bar No. 0813818

8

## SERVICE LIST

***Served Via CM/ECF Notification***
Atlas Acquisitions
bk@atlasacq.com

Rachel S Budke, Esq on behalf of Creditor Florida Power & Light Company
rachel_budke@fpl.com, denise_chapman@fpl.com;miriam_corzo_garcia@fpl.com

Patrick R Dorsey on behalf of Respondent Brian and Maria Thompson
pdorsey@sfl-pa.com, vchapkin@sfl-pa.com;dwoodall@sfl-pa.com;scusack@sfl-pa.com

James B Flanigan on behalf of Creditor John & Maria Burgun
jbf@trippscott.com, bankruptcy@trippscott.com

Mariaelena Gayo-Guitian on behalf of Trustee Kenneth A Welt
mguitian@gjb-law.com, gjbecf@gjb-law.com;vlambdin@gjb-law.com;cesser@gjb-law.com;chopkins@gjb-law.com

Annessa S Kalloo on behalf of Creditor Wells Fargo Bank, N.A.
bkfl@albertellilaw.com

Susan D. Lasky, Esq on behalf of Debtor Michael James Picazio
ECF@suelasky.com, ECFSueLasky@gmail.com

Arthur C. Neiwirth, Esq. on behalf of Creditor John & Maria Burgun
aneiwirthcourt@qpwblaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Robert F. Reynolds on behalf of Interested Party Kim Picazio
rreynolds@slatkinreynolds.com, imalcolm@slatkinreynolds.com

Kenneth A Welt
kaw@kawpa.com,
fl10@ecfcbis.com;pacerfilings@gmail.com;kaw@trustesolutions.net;court@trusteeservices.biz

Label Matrix for local noticing
113C-0
Case 13-39597-RBR
Southern District of Florida
Fort Lauderdale
Fri Aug 22 15:22:41 EDT 2014

Atlas Acquisitions
c/o Evan S. Singer
6267 Old Water Oak Rd #203
Tallahassee, FL 32312-3858

Florida Power & Light Company
c/o Rachel S Budke
700 Universe Blvd
Juno Beach, FL 33408-2683

Atlas Acquisitions LLC
294 Union St.
Hackensack, NJ 07601-4303

Broward County Environmental Protection
One North Univ Dr
Suite 102
Plantation, FL 33324

City of Fort Lauderdale
POB 31687
Tampa, FL 33631-3687

City of Ft. Lauderdale
Treasury Utility Bldg
100 N. Andrews Ave.
Fort Lauderdale, FL 33301-1016

Credit Collections Svc
POB 773
Needham, MA 02494-0918

Credit One Bank
POB 98873
Las Vegas, NV 89193-8873

Diversified Adjustments
Dasi-Bankrupcty
POB 32145
Fridley, MN 55432-0145

Douglas H Reynolds, Esq.
Tripp Scott PA
110 SE 6 St
15th Floor
Fort Lauderdale, FL 33301-5004

Dpt Treasury
Bankruptcy Department/Attn: Locs
POB 1686
Birmingham, AL 35201-1686

Electrocardiogram Assoc.
1175 Devin Drive #174
Muskegon, MI 49441-6079

Emergency Physician Billing
Holy Cross Emergency Phys
POB 277423
Atlanta, GA 30384-7423

FPL
General Mail Facility
Miami, FL 33188-0001

Florida Department of Revenue
5050 W. Tennessee Street
Tallahassee, FL 32399-0100

Florida Power and Light
700 Universe Blvd
Juno Beach, FL 33408-2683

Frederick Schweitzer
7471 W. Oakland Park Blvd #102
Lauderhill, FL 33319-4921

Holy Cross Hospital
POB 23460
Fort Lauderdale, FL 33307-3460

Holy Cross Medical Group
POB 70610
Fort Lauderdale, FL 33307-0610

Holy Cross Medical Group
POB 70700
Fort Lauderdale, FL 33307-0700

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

IRS
POB 7346
Philadelphia, PA 19101-7346

Inphynet South Broward Inc
POB 740022
Cincinnati, OH 45274-0022

James Picazio
2001 NE 34th Street
Pompano Beach, FL 33064-7513

John Burgun/Maria Burgun
110 SE 6th Street
Fort Lauderdale, FL 33301-5000

Lance W Shinder PA
Glades Twin Plaza, 2300 Glades Rd
Suite 207
Boca Raton, FL 33431

M Leonard & Associates
POB 2339
Van Nuys, CA 91404-2339

M.J. Zeil
1840 NE 56th Court
Fort Lauderdale, FL 33308-2407

Marion Lowry
4900 N. Ocean #812
Lauderdale-By-The Sea, FL 33308-2934

Memorial Healthcare System
Patient Financial Services
2900 Corporate Way
Miramar, FL 33025-3925

Met Life Insurance Co.
POB 321
Warwick, RI 02887-0321

Miami Dade County
c/o Sarah E Davis Esq
111 NW First St
Suite 2810
Miami, FL 33128-1930

Midland Funding
8875 Aero Dr Ste 200
San Diego, CA 92123-2255

Morton Ginsberg
4100 North Ocean Blvd #1208
Boca Raton, FL 33431

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Peter M Commette Esq
1323 SE 3 Ave
Fort Lauderdale, FL 33316-1907

Pioneer Credit Recovery
26 Edward Street
Arcade, NY 14009-1012

Radiology Associates of Hollywood
9050 Pines Blvd
Suite 200
Hollywood, FL 33024-6456

Rapid Auto Loans
911 E Atlantic Blvd
Pompano Beach, FL 33060-7372

Rio Vista Management Group Inc.
113 SW 11th Court #c
Fort Lauderdale, FL 33315-1271

Scott Weiss
4310 Conifer Ct #101
Union Grove, WI 53182-9761

South Florida Medical Imaging
POB 11398
Fort Lauderdale, FL 33339-1398

Suntrust
POB 305053
Nashville, TN 37230-5053

Wells Fargo
POB 98751
Las Vegas, NV 89193-8751

Wells Fargo Bank NA
4101 Wiseman Blvd
San Antonio, TX 78251-4200

Brian and Maria Thompson
c/o Shraiberg, Ferrara & Landau, P.A.
2385 NW Executive Center Drive
Suite 300
Boca Raton, FL 33431-8530

Harry Stampler
Stampler Auctions
1914 Tigertail Blvd
Dania Beach, FL 33004-2128

Kenneth A Welt
1776 Pine Island Rd #222
Plantation, FL 33322-5223

Michael James Picazio
2101 Middle River Drive
Fort Lauderdale, FL 33305-3537

Susan D. Lasky Esq
915 Middle River Dr
Suite 420
Fort Lauderdale, FL 33304-3561

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

IRS
POB 21126
Philadelphia, PA 19114

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Wells Fargo Bank, N.A.

(u)Commercial Hood & Trap Svcs Inc

(u)John & Maria Burgun
c/o Arthur Neiwirth, Esq.
One East Broward Blvd., Su 1200
Ft. Lauderdale

(u)Kim Picazio

End of Label Matrix
Mailable recipients    50
Bypassed recipients     4
Total                  54

# COMPOSITE EXHIBIT "A"

# "AS IS" Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR


ƒl↑↑Florida Realtors®

| 1* | **PARTIES:** _____ **PICAZIO, MICHAEL & KIM** _____ ("Seller"), |
| 2* | and _____ **2101 MIDDLE RIVER DRIVE  LLC** _____ ("Buyer"), |

3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal
4  Property (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale
5  And Purchase and any riders and addenda ("Contract"):

6  **1. PROPERTY DESCRIPTION:**
7*  (a) Street address, city, zip: _____ **2101 MIDDLE RIVER DR, FORT LAUDERDALE, FL 33304** _____
8*  (b) Property is located in: _____ **BROWARD** _____ County, Florida. Real Property Tax ID No: _____ **4942 25 03 1510** _____
9*  (c) Legal description of the Real Property: **CORAL RIDGE GALT ADD 27-46 B LOT 40 BLK 10**
10*

11  together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
12  attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded below.
13  (d) Personal Property: The following items owned by Seller and existing on the Property as of the date
14  of the initial offer are included in the purchase ("Personal Property"): (i) range(s)/oven(s), dishwasher(s),
15  disposal, ceiling fan(s), intercom, light fixtures, rods, draperies and other window treatments, garage door
16  openers, and security gate and other access devices; and (ii) those additional items checked below. If
17*  additional details are necessary, specify below. **If left blank, the item below is not included:**

☐ Refrigerator(s)          ☐ Smoke detector(s)          ☐ Pool barrier/fence          ☐ Storage shed
☐ Microwave oven           ☐ Security system            ☐ Pool equipment              ☐ TV antenna/satellite dish
☐ Washer                   ☐ Window/wall a/c            ☐ Pool heater                 ☐ Water softener/purifier
☐ Dryer                    ☐ Generator                  ☐ Spa or hot tub with heater  ☐ Storm shutters and
☐ Stand-alone ice maker                                 ☐ Above ground pool             panels

18  The only other items of Personal Property included in this purchase, and any additional details regarding
19*  Personal Property, if necessary, are: **N/A**
20*
21  Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
22*  (e) The following items are excluded from the purchase: **N/A**
23*

24*  **2. PURCHASE PRICE** (U.S. currency):.................................................................... $ _____ **1,160,000.00**
25*  (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** $ _____ **10,000.00**
26  The initial deposit made payable and delivered to "Escrow Agent" named below
27*  **(CHECK ONE):** ☐ accompanies offer or ☐ is to be made upon acceptance (Effective Date)
28*  or ☐ is to be made within _____ (if blank, then 3) days after Effective Date
29*  Escrow Agent Information: Name: _____ **NU WORLD TITLE** _____
30*  Address: _____ **Doral, FL.** _____ Phone: _____ **305.436.0100** _____
31*  E-mail: _____ Fax: _____
32*  (b) Additional deposit to be delivered to Escrow Agent within _____ (if blank, then 3)
33*  days after Effective Date............................................................................$ _____
34  (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
35*  (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ......... _____
36*  (d) Other: _____ ......$ _____
37  (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
38*  transfer or other COLLECTED funds..............................................................$ _____ **1,150,000.00**
39  NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
40  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
41*  (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before **JULY 18 2014**
42*  _____, this offer shall be deemed withdrawn and the Deposit, if any, will be returned to Buyer.
43  Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
44  counter-offer is delivered.
45  (b) The effective date of this Contract will be the date when the last one of the Buyer and Seller has signed or
46  initialed this offer or final counter-offer ("Effective Date").
47  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
48  and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
49*  ("Closing") on _____ **OCTOBER 17, 2014** _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials _____ _____          Page 1 of 10          Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

50 **5. EXTENSION OF CLOSING DATE:**
51     (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA)
52        notice requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements,
53        not to exceed 7 days.
54     (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes:
55        (i) disruption of utilities or other services essential for Closing, or (ii) Hazard, Wind, Flood or Homeowners'
56        insurance, to become unavailable prior to Closing, Closing will be extended a reasonable time up to 3 days
57        after restoration of utilities and other services essential to Closing, and availability of applicable Hazard, Wind,
58        Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not
59*       occurred within _____ (if left blank, 14) days after Closing Date, then either party may terminate this
60        Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby
61        releasing Buyer and Seller from all further obligations under this Contract.
62 **6. OCCUPANCY AND POSSESSION:** Unless otherwise stated herein, Seller shall at Closing, have removed all
63    personal items and trash from the Property and shall deliver occupancy and possession, along with all keys,
64    garage door openers, access devices and codes, as applicable, to Buyer. If Property is intended to be rented or
65    occupied beyond Closing, the fact and terms thereof and the tenant(s) or occupants shall be disclosed pursuant
66    to STANDARD D. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to Property from
67    date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have
68    accepted Property in its existing condition as of time of taking occupancy.
69* **7. ASSIGNABILITY: (CHECK ONE)** Buyer ☐ may assign and thereby be released from any further liability
70*    under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign
71    this Contract.

72 <center>**FINANCING**</center>
73 **8. FINANCING:**
74*    ☒ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing
75        contingency to Buyer's obligation to close.
76*    ☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA
77*        ☐ VA loan on the following terms within _____ (if blank, then 30) days after Effective Date ("Loan
78*        Commitment Date") for: **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in
79*        the principal amount of $ _____ or _____ % of the Purchase Price, at an initial interest rate
80*        not to exceed _____ % (if blank, then prevailing rate based upon Buyer's creditworthiness), and for a
81*        term of _____ years ("Financing").

82*        Buyer will make mortgage loan application for the Financing within _____ (if blank, then 5) days after
83        Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing
84        ("Loan Commitment") and close this Contract. Buyer shall keep Seller and Broker fully informed about
85        the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and
86        Buyer's lender to disclose such status and progress to Seller and Broker.

87        If Buyer does not receive Loan Commitment, then Buyer may terminate this Contract by delivering written
88        notice to Seller, and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
89        further obligations under this Contract.

90        If Buyer does not deliver written notice to Seller of receipt of Loan Commitment or Buyer's written waiver of
91        this financing contingency, then after Loan Commitment Date Seller may terminate this Contract by
92        delivering written notice to Buyer and the Deposit shall be refunded to Buyer, thereby releasing Buyer and
93        Seller from all further obligations under this Contract.

94        If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not
95        thereafter close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default;
96        (2) Property related conditions of the Loan Commitment have not been met (except when such conditions
97        are waived by other provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is
98        insufficient to meet terms of the Loan Commitment; or (4) the loan is not funded due to financial failure of
99        Buyer's lender, in which event(s) the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller
100       from all further obligations under this Contract.
101*    ☐ (c) Assumption of existing mortgage (see rider for terms).
102*    ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

Buyer's Initials _____ _____      Page 2 of 10      Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

**CLOSING COSTS, FEES AND CHARGES**

**9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

(a) **COSTS TO BE PAID BY SELLER:**
- Documentary stamp taxes and surtax on deed, if any
- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
- Title search charges (if Paragraph 9(c)(iii) is checked)
- Other: _____

- HOA/Condominium Association estoppel fees
- Recording and other fees needed to cure title
- Seller's attorneys' fees

If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a sum equal to 125% of estimated cost to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual costs. Any unused portion of escrowed amount shall be returned to Seller.

(b) **COSTS TO BE PAID BY BUYER:**
- Taxes and recording fees on notes and mortgages
- Recording fees for deed and financing statements
- Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
- Survey (and elevation certification, if required)
- Lender's title policy and endorsements
- HOA/Condominium Association application/transfer fees
- Other: _____

- Loan expenses
- Appraisal fees
- Buyer's Inspections
- Buyer's attorneys' fees
- All property related insurance

(c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if blank, then 5) days prior to Closing Date, a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy premium and charges for owner's policy endorsements, title search, and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below (CHECK ONE):

☒ (i) Seller will designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select); or

☐ (ii) Buyer will designate Closing Agent and pay for Owner's Policy and Charges and charges for closing services related to Buyer's lender's policy, endorsements, and loan closing; or

☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller will furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $ _____ (if blank, $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) **SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☐ N/A will pay for a home warranty plan issued by _____ at a cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller will pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer will pay all other assessments. **If special assessments may be paid in installments (CHECK ONE):**

☐ (a) **Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.**

☐ (b) **Seller shall pay the assessment(s) in full prior to or at the time of Closing.**

**IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.**

This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190 F.S. which lien shall be treated as an ad valorem tax and prorated pursuant to STANDARD K.

Buyer's Initials _____ _____          Page 3 of 10          Seller's Initials _____ _____

DISCLOSURES

**10. DISCLOSURES:**

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) **PERMITS DISCLOSURE: Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed.**

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal High Hazard Area" and finished floor elevation is below minimum flood elevation, Buyer may terminate this Contract by delivering written notice to Seller within 20 days after Effective Date, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property.

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint rider is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **TAX WITHHOLDING:** If Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"), Buyer and Seller will comply with FIRPTA, which may require Seller to provide additional cash at Closing.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as stated in the preceding sentence or otherwise disclosed in writing: (1) Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation; and (2) Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property.

**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ____14__ (if blank, 15) days from Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be immediately returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

Buyer's Initials _____    _____    Page 4 of 10    Seller's Initials _____    _____

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

**ESCROW AGENT AND BROKER**

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida, and subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order. Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

268 Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this
269 Contract.

**DEFAULT AND DISPUTE RESOLUTION**

271 **15. DEFAULT:**

272 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
273 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the
274 Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this
275 Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further
276 obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity
277 to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon
278 default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however,
279 Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay
280 to Cooperating Broker.

281 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
282 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
283 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
284 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
285 performance. This Paragraph 15 shall survive Closing or termination of this Contract.

286 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
287 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be
288 settled as follows:

289 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
290 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under
291 Paragraph 16(b).

292 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
293 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
294 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
295 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
296 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16
297 shall survive Closing or termination of this Contract.

298 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
299 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
300 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to
301 recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting
302 the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

304 **18. STANDARDS:**

305 **A. TITLE:**

306 (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
307 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
308 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or
309 before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the
310 amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
311 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
312 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat
313 or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry;
314 (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in
315 width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent
316 years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum);
317 provided, that none prevent use of the Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any
318 violation of items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall be
319 determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with
320 law.

321 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify
322 Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it
323 is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after
324 date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period")
325 after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller,
326 Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will

### STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others; or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D.  LEASES:** Seller shall, within 5 days after Inspection Period, furnish to Buyer copies of all written leases and estoppel letters from each tenant specifying nature and duration of tenant's occupancy, rental rates, advanced rent and security deposits paid by tenant, and income and expense statements for preceding 12 months ("Lease Information"). If Seller is unable to obtain estoppel letters from tenant(s), the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact tenant(s) to confirm such information. If terms of the lease(s) differ materially from Seller's representations, Buyer may deliver written notice to Seller within 5 days after receipt of Lease Information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all original leases to Buyer who shall assume Seller's obligation thereunder.

**E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting; (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller, and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F.  TIME:** Calendar days shall be used in computing time periods. Any time periods provided for in this Contract which shall end on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day. **Time is of the essence in this Contract.**

**G.  FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by an absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I.  CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

(i) **LOCATION:** Closing will take place in the county where the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title

387 **STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)**

388 insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.

389 (ii) **CLOSING DOCUMENTS:** At Closing, Seller shall furnish and pay for, as applicable, deed, bill of sale,
390 certificate of title, construction lien affidavit, owner's possession affidavit, assignments of leases, and corrective
391 instruments. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract.
392 Buyer shall furnish and pay for, as applicable, mortgage, mortgage note, security agreement, financing statements,
393 survey, base elevation certification, and other documents required by Buyer's lender.

394 (iii) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title
395 Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the
396 escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to**
397 **COLLECTION of all closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to
398 Seller.

399 **J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
400 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow
401 and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period
402 of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer
403 shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt
404 of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds
405 paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with
406 such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to
407 Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the
408 Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be
409 available to Buyer by virtue of warranties contained in the deed or bill of sale.

410 **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
411 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
412 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
413 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in
414 which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by
415 prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to
416 Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current
417 year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing
418 occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be
419 prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then
420 taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of
421 year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated
422 based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which,
423 request shall be made to the County Property Appraiser for an informal assessment taking into account available
424 exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of
425 current year's tax bill. This STANDARD K shall survive Closing.

426 **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
427 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
428 including a walk-through (or follow-up walk-through if necessary) prior to Closing.

429 **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
430 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
431 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
432 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
433 cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of
434 restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
435 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
436 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
437 Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
438 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

439 **N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneous with
440 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
441 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
442 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
443 upon, nor extended or delayed by, such Exchange.

444 **O.  CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; COPIES:** Neither this Contract nor any
445 notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the
446 parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural

Buyer's Initials _____  _____   Page 8 of 10   Seller's Initials _____  _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

447 **STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)**
448 and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real
449 estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in
450 writing and may be made by mail, personal delivery or electronic (including "pdf") media. A legible facsimile or
451 electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an
452 original.
453 **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
454 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
455 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
456 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
457 to be bound by it.
458 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
459 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
460 rights.
461 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
462 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
463 **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received,**
464 **including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent**
465 **or Closing Agent. Closing and disbursement of funds and delivery of Closing documents may be delayed by**
466 **Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**
467 **T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and
468 conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower.
469 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of
470 Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county in
471 which the Real Property is located.
472 **X. BUYER WAIVER OF CLAIMS:** *Buyer waives any claims against Seller and, to the extent permitted by*
473 *law, against any real estate licensee involved in the negotiation of this Contract, for any defects or other*
474 *damage that may exist at Closing of this Contract and be subsequently discovered by the Buyer or anyone*
475 *claiming by, through, under or against the Buyer.*

476 **ADDENDA AND ADDITIONAL TERMS**
477 **19. ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this
478* Contract (**Check if applicable**):

| | | | |
|---|---|---|---|
| ☐ A. Condominium Assn. | ☐ L. RESERVED | ☐ R. Rezoning | ☐ Y. Seller's Attorney |
| ☐ B. Homeowners' Assn. | | ☐ S. Lease Purchase/ | Approval |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | Lease Option | ☐ Z. Buyer's Attorney |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction | ☐ T. Pre-Closing | Approval |
| ☐ E. FHA/VA Financing | Control Line | Occupancy | ☐ AA. Licensee-Personal |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | ☐ U. Post-Closing | Interest in Property |
| ☐ G. Short Sale | ☐ P. Pre-1978 Housing | Occupancy | ☐ BB. Binding Arbitration |
| ☐ H. Homeowners' Insurance | Statement (Lead | ☐ V. Sale of Buyer's | ☐ Other _____ |
| ☐ I. FIRPTA | Based Paint) | Property | _____ |
| ☐ J. Interest-Bearing Acct. | ☐ Q. Housing for Older | ☐ W. Back-up Contract | _____ |
| ☐ K. RESERVED | Persons | ☐ X. Kick-out Clause | _____ |

479* **20. ADDITIONAL TERMS:** _____
480* **THIRD PARTY APPROVAL REQUIRED** _____
481* _____
482* _____
483* _____
484* _____
485* _____
486* _____
487* _____
488* _____
489* _____
490* _____
491* _____
492* _____
493* _____

Buyer's Initials _____ _____ Page 9 of 10 Seller's Initials _____ _____

494 **COUNTER-OFFER/REJECTION**
495* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
496 deliver a copy of the acceptance to Seller).
497* ☐ Seller rejects Buyer's offer.

498 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE**
499 **OF AN ATTORNEY PRIOR TO SIGNING.**

500 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

501 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
502 *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*
503 *should be negotiated based upon the respective interests, objectives and bargaining positions of all interested*
504 *persons.*

505 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
506 BE COMPLETED.

507* Buyer: _____    Date: 7/15/14

508* Buyer: _____    Date: _____

509* Seller: _____    Date: 7/15/14

510* Seller: _____    Date: 7-15-14

511 Buyer's address for purposes of notice            Seller's address for purposes of notice
512* _____          _____
513* _____          _____
514* _____          _____

515 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
516 to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent
517 to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
518 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
519 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
520 made by Seller or Listing Broker to Cooperating Brokers.

521* **HENRY BRUCE**                          **GILBERT GARCIA**
522 **Cooperating Sales Associate, if any**         **Listing Sales Associate**

523* **FLORIDA HOUSE REALTY**                    **PROSPERITY BROKERS GROUP**
524 **Cooperating Broker, if any**                   **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

## A. SETTLEMENT STATEMENT

U. S. Department of Housing and Urban Development

| B. Type of Loan<br>1. [ ] FHA   2. [ ] FmHA   3. [) Conv. Unins.<br>4. [ ] VA   5. [ ] Conv. Ins.   6. [ ] AFD | 7. File Number | 8. Loan Number | 9.Mortgage Insurance Case # |
|---|---|---|---|

C. Note:This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower<br>2101 Middle River Dr LLC<br>0<br>0 | E. Name and Address of Seller<br>Michael & Kim Picazio<br>2101 Middle River Dr<br>Ft. Lauderdale FL 33305 | F. Name and Address of Lender<br>0<br>0<br>0 |
|---|---|---|

| G. Property Location<br>2101 Middle River Dr<br>Ft. Lauderdale FL 33305 | H. Settlement Agent<br>NU World Title | |
|---|---|---|
| | Place of Settlement<br>Ft. Lauderdale FL 33305 | I.Settlement Date<br>08/30/2014 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract sales price | 1,160,000.00 | 401. Contract sales price | 1,160,000.00 |
| 102. Personal property | 0.00 | 402. Personal property | 0.00 |
| 103. Settlement charges to borrower (line 1400) | 700.00 | 403. | |
| 104.Settlement to the | | 404. | |
| **Adjustments for Items paid by seller In advance** | | **Adjustments for Items paid by seller In advance** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 120. Gross Amount Due From Borrower | 1,160,700.00 | 420. Gross Amount Due To Seller | 1,160,000.00 |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 600. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | 0.00 | 501. Excess deposit (see instructions) | 0.00 |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 76,605.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of 1st mortgage to Wells Fargo | 1,041,795.00 |
| 205. | | 505. | |
| 206. | | 506.   1% allowence to tUS Trustee. | 11,600.00 |
| 207. | | 507.   Seller relocation allowance | 3,000.00 |
| **Adjustments for Items unpaid by seller** | | **Adjustments for Items unpaid by seller** | |
| 210. City/town taxes          to | 0.00 | 510. City/town taxes          to | |
| 211. County taxes          to   08/30/14 | 0.00 | 511. County taxes          to   08/30/14 | 27,000.00 |
| 212. Assessments          to   HOA | 0.00 | 512. Assessments          to   HOA | 0.00 |
| 213. Seller Concession | 0.00 | 513.  Seller Concession | 0.00 |
| 220. Total Paid By/For Borrower | 0.00 | 520. Total Reduction Amount Due Seller | 1,041,795.00 |
| 300.  Cash At Settlement From/To Borrower | | 600.  Cash At Settlement To/From Seller | |
| 301.  Gross Amount due from Borrower (line 120) | 1,160,700.00 | 601. Gross amount due to Seller (line 420) | 1,160,000.00 |
| 302. Less amounts Paid by/for Borrower (line 220) | 0.00 | 602. Less reductions in amount due Seller (line 520) | 0.00 |
| 303. Cash          [ X ] From     [ ] To Borrower | 1,160,700.00 | 603. Cash          [X ] From     [ ] To Seller | 1,160,000.00 |

**Borrower:**                                    **Seller:**

## L. Settlement Charges

| | | Paid From Borrowers' Funds at Settlement | Paid From Sellers' Funds at Settlement |
|---|---|---|---|
| 700. | Total Sales/Broker's Commission based on price: @ 6% | | |
| | Division of Commission (line 700) as follows: | | |
| 701. | | | |
| 702. | | | |
| 703. | Cooperating Broker, Henry bruce, Florida House Realty 2.5% | | 29,000.00 |
| 704. | Listing Broker, Gilbert Garcia, Prosperity Brokers Group 2.5 % | | 29,000.00 |
| 800. | **Items Payable In Connection With Loan** | | |
| 801. | Loan Origination Fee    0      to    0 | 0.00 | |
| 802. | Loan Discount                    % | | |
| 803. | Appraisal Fee to  Quick Appraisals | | |
| 804. | Credit Report to | | |
| 805. | Inspection Fee to Quick Inspections | | |
| 806. | Mortgage Insurance Application Fee to | | |
| 807. | | | |
| 808. | | | |
| 809. | | | |
| 900. | **Items Required By Lender To Be Paid In Advance** | | |
| 901. | Interest from           to           @$           / days | | |
| 902. | Mortgage Insurance Premium for              months to | | |
| 903. | Hazard Insurance Premium for          1          years to | 0.00 | |
| 904. | Flood Insurance Premium for          years to | | |
| 905. | | | |
| 1000. | **Reserves Deposited With Lender** | | |
| 1001. | Hazard insurance           months @ $           per month | | |
| 1002. | Mortgage insurance           months @ $           per month | | |
| 1003. | City property taxes           months @ $           per month | | |
| 1004. | County property taxes           months @ $           per month | | |
| 1005. | Annual assessments           months @ $           per month | | |
| 1006. | Flood Insurance           months @ $           per month | | |
| 1100. | **Title Charges** | | |
| 1101. | Settlement or closing fee           to          NU World Title | 500.00 | 2,500.00 |
| 1102. | Abstract or title search           to          NU World Title | | 400.00 |
| 1103. | Title examination           to          NU World Title | | 200.00 |
| 1104. | Title insurance binder           to | 100.00 | |
| 1105. | Document preparation           to | | 0.00 |
| 1106. | Notary fees           to | 0.00 | 0.00 |
| 1107. | Attorney's fees           to    Susan Lasky | | 2,000.00 |
| | (includes above items numbers: | | |
| 1108. | Title insurance | 0.00 | 4,800.00 |
| | (includes above items numbers: | | |
| 1109 | Lender's coverage           $ | | |
| 1110. | Owner's coverage           $ | | |
| 1111. | Notary fees           to | 0.00 | 150.00 |
| 1112. | Courier Fee | 50.00 | 0.00 |
| 1113. | Wire Fees | 50.00 | 0.00 |
| 1200. | **Government Recording and Transfer** | 0.00 | |
| 1201. | Recording fees: Deed $35.00       ; Mortgage $   0.00       ; Releases $ | | 35.00 |
| 1202. | City/county tax/stamps:           Mortgage $ | | 0.00 |
| 1203. | State tax/stamps:           deed  $ 8120 | 0.00 | 8,120.00 |
| 1300. | **Additional Settlement Charges** | | 0.00 |
| 1301. | Survey | 0.00 | 400.00 |
| 1302. | | 0.00 | 0.00 |
| 1303. | Facilitation Fee to :   RIS Capital Group | | 0.00 |
| 1304. | | | |
| 1400. | **Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | 700.00 | 76,605.00 |

Page 2 of 2